# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of:

Four cell phones, all seized on July 11, 2019, which are in the custody of the Milwaukee Police Department. See Attachment A.

Case No. 19-910M (NJ)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A.

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B.

The basis for the search under Fed. R. Crim P. 41(c) is:

- ■ evidence of a crime;
- ■ contraband, fruits of crime, or other items illegally possessed;
- ■ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: Title 18, United States Code, Section 922(g) and 924(a)(2)

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Thomas Greenwich, ATF
*Printed Name and Title*

Sworn to before me and signed in my presence:

Date: August 26, 2019

*Judge's signature*

City and State: Milwaukee, Wisconsin

Nancy Joseph, U.S. Magistrate Judge
*Printed Name and Title*

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS

I, Thomas Greenwich, being first duly sworn on oath, on information and belief state:

## I. BACKGROUND, TRAINING, AND EXPERIENCE:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been since May 2018. As part of my professional experience, I have participated in State and Federal investigations involving the illegal possession of firearms and narcotics. Previously, I was employed by the Federal Air Marshal Service with my last Field Office being located in Chicago, Illinois, for approximately 9 years. I worked as a police officer in Cook County, Illinois, and Glen Ellyn, Illinois, prior to my time as a Federal Air Marshal. I earned a Masters of Arts Degree in Intelligence Studies with Emphasis in Terrorism from the American Military University in 2013. I also received both a Bachelor's Degree with honors in Criminal Justice from the University of Phoenix in 2010. I have participated in the service of state search and seizure warrants and have seized or assisted in seizing contraband, including firearms, ammunition, documentary evidence and contraband. I further state that I am a federal agent as delineated in Title 18, United States Code, Section 3051.

2. Based on my training and experience, I believe there is probable cause that JERRY WILLIAMS (DOB XX/XX/1979) possessed a firearm on July 7, 2019, after having been convicted of a felony, in violation of Title 18, United States Code, Sections 922(g) and 924(a)(2).

3. This affidavit is based upon my personal knowledge and information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. This affidavit is based upon information provided by other law enforcement officers' police reports, citizen witnesses' statements,

surveillance footage, business records, post-arrest statements, and other information whose reliability is established separately herein.

4. This affidavit is submitted in support of an application for search warrants for the following portable electronic devices ("Devices"), which are currently in evidence at the Milwaukee Police Department, for evidence of the aforementioned crime:

    a. a black LG touch screen cell phone, in evidence at the Milwaukee Police Department under Inventory # 19022487, Item 3;

    b. a grey and black LG touch screen phone, in evidence at the Milwaukee Police Department under Inventory # 19022487, Item 4;

    c. a black LG touch screen cell phone with cracked screen, in evidence at the Milwaukee Police Department under Inventory # 19022487, Item 5; and

    d. a grey LG touch screen cell phone, in evidence at the Milwaukee Police Department under Inventory # 19022487, Item 6.

5. Because this affidavit is submitted for the limited purpose of obtaining search warrants, I have not included each and every fact known to me concerning this investigation. I have attempted to set forth only the facts that I believe are pertinent to establishing the necessary foundation for the requested warrants.

## II. PROBABLE CAUSE

6. On Sunday, July 7, 2019, at 7:11 p.m., Milwaukee Police Department ("MPD") squads were dispatched to 2100 W. Pierce Street, in Milwaukee, Wisconsin, regarding a shooting complaint. Upon arrival, the victim Carlos R. Reyes (DOB XX/XX/1972) was located unresponsive with a single gunshot wound to his head. The Milwaukee Fire Department personnel arrived and pronounced the victim deceased at 7:24 p.m. per their protocol.

7. MPD Homicide Detectives Christopher Fritz and Detective Guy Fraley conducted the scene investigation and the scene was located in the southeast corner of the parking lot behind the apartment building located at 2100 W. Pierce Street. The victim's vehicle was parked facing south along the south fence line four spots west of the east fence line. The vehicle was running when officers arrived. The driver's door was partially open. The victim was lying on the ground facedown when officers arrived. The officers then flipped the victim's body over to perform CPR. The victim's pants were unbuttoned and unzipped, and his belt was unfastened. A starter pistol and three 9mm starter caps were recovered next to the left side of the victim's body. There were eight .40 caliber casings and a bullet recovered from the scene. The victim's wallet and a cellular phone were recovered from the victim's vehicle. There was a bullet strike to the driver's side rear quarter panel of the victim's vehicle. There were two bullet strikes to a Dodge Dakota that was parked two spots to the east of the victim's vehicle.

8. Numerous witnesses were interviewed on scene. According to witness statements, they had been dealing with drug transactions and prostitution related issues in the parking lot since the main entrance gate broke. Witnesses stated that they heard numerous gunshots being fired. One of the witnesses observed Suspect #1 fire one more shot toward the victim. The witness provided the following description of Suspect #1: a black male, approximately 28 years-old, 5'08" tall, with a medium build, light complexion, short faded haircut, and wearing a black T-shirt, red, white, and blue shorts, and white Nike shoes. After Suspect #1 fired the last shot, witnesses observed Suspect #1 drag the victim by his ankles approximately one to two feet to the northeast. Witnesses then observed Suspect #1 and Suspect #2 (described as: a black female, mid 20's to early 30's, 5'04"-5'06" tall, medium curvy build, long braided hair, dark complexion, wearing a tan dress or tank top) enter the suspect vehicle, which witnesses described as a dark blue or black 4-door

3

Infiniti, with a moon roof, chrome package, alloy rims, no tint, unknown plates. The Infiniti was parked just to the east of the victim's vehicle. Witnesses then observed the suspect vehicle flee from the lot. Witnesses believed that Suspect #1 moved the victim because the victim was lying in front of the suspect vehicle when it was parked.

9. Officers obtained video surveillance footage from the scene. Although the footage does not depict the homicide, the video does depict the victim vehicle enter the parking lot at 7:01 p.m. and drive to the southeast corner of the lot. The victim vehicle is then out of camera view. At 7:02 p.m., the suspect vehicle enters the lot and stops. Suspect #1 exits the driver's door and kicks around some debris on the ground. Suspect #1 re-enters the driver's seat at 7:04 p.m. and continues into the parking lot toward the area of the victim's vehicle. The suspect vehicle then drives out of camera view. At 7:08 p.m., the suspect vehicle flees out of the parking lot.

10. Detective Jeff Sullivan obtained surveillance video from the MCTS (Bus # 5449), which revealed that the suspect vehicle had a Wisconsin Registration Plate of AFP-1026. The registration plate of AFP-1026 listed to Jaslyn A. THOMAS (DOB XX/XX/1998) and listed to a 2004 dark blue Infiniti G35, VIN: JNHKCV51E34M605987. A check of THOMAS in the MPD system revealed that THOMAS matches the physical description of Suspect #2.

11. On July 11, 2019, at 10:00 a.m., Detective John Ivy was working in an undercover capacity and discovered the above-listed suspect vehicle (2004 dark blue Infiniti G35, WI Plate # AFP-1026) in the 4200 block of N. 13th St. Police Officers Carpenter and Anders arrived in the area to stage and assist in anticipation of stopping anyone who approached the vehicle.

12. At 11:30am, PO Kim LASTRILLA, who was also watching the parked Infiniti, observed a black Lincoln MKZ (WI Plate # AEU-4597) drive up to the suspect vehicle. A black female exited the rear passenger door of the Lincoln MKZ and approached the suspect vehicle on

4

foot. The front passenger of the Lincoln MKZ appeared to be Jerry E. WILLIAMS (DOB XX/XX/1979) who had been previously stopped with THOMAS and matched the physical description of Suspect #1 in the above-listed homicide.

13. At 11:40 a.m., Officers Carpenter and Anders conducted a traffic stop of the Lincoln MKZ at 4046 N. 13th St., made contact with the driver (Xavier G. CARTER, DOB XX/XX/1990) and the front passenger (Jerry E. WILLIAMS, DOB XX/XX/1979). WILLIAMS was placed under arrest for the homicide of Reyes.

14. At 11:45 a.m., officers conducted a traffic stop at 1321 W. Hauser Avenue of Jaslyn THOMAS (DOB XX/XX/1998) who was driving the above-listed suspect vehicle (Infiniti G35). THOMAS was placed under arrest and Detective Jacks arrived on scene and conducted a mirandized interview, which was audio recorded. THOMAS's initial statement was that on July 7, 2019, she met the victim (Reyes), got into his vehicle, and was forced to perform a sexual act at gunpoint. THOMAS stated that WILLIAMS arrived during the sexual assault, retrieved her handgun from the glovebox of her vehicle, and confronted the victim (Reyes), which resulted in a shooting and the death of the victim. THOMAS eventually informed MPD detectives in subsequent interviews that she was engaged in a sexual act with the victim in exchange for U.S. Currency and there was a dispute over the amount of money that she was to be paid. THOMAS stated that she contacted WILLIAMS, her pimp, by cell phone to inform him of the dispute over money. WILLIAMS arrived to confront the victim, and the shooting occurred. THOMAS further stated that after the shooting, THOMAS and WILLIAMS fled the scene in her Infiniti. A couple of hours later, WILLIAMS disposed of the firearm by throwing it into a sewer located at 2418 N. 19th Street. Officers recovered a Smith and Wesson, model SD40 VE, .40 caliber pistol, bearing serial number

FXE 1187 from the sewer grate. This firearm had previously been transported in interstate commerce insofar as it was manufactured outside the state of Wisconsin.

15. Detective Jacks received verbal and written consent from THOMAS to search her Infiniti (the suspect vehicle) and located the following cell phones from the listed locations:

   a. a black LG touch screen cell phone, recovered from the front passenger seat and currently in evidence at the Milwaukee Police Department under Inventory # 19022487, Item 3;

   b. a grey and black LG touch screen phone, recovered from the front passenger seat and currently in evidence at the Milwaukee Police Department under Inventory # 19022487, Item 4;

   c. a black LG touch screen cell phone with cracked screen, recovered from inside the center console and currently in evidence at the Milwaukee Police Department under Inventory # 19022487, Item 5; and

   d. a grey LG touch screen cell phone recovered from the rear passenger side door and currenlty in evidence at the Milwaukee Police Department under Inventory # 19022487, Item 6.

16. THOMAS claimed ownership of two of the phones and stated the assigned telephone numbers were: 708-253-3467 and 414-999-6821. THOMAS provided written consent to search her two phones.

## III. TECHNICAL TERMS

17. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication

6

through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that

7

are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

## IV. ELECTRONIC STORAGE AND FORENSIC ANALYSIS

18. Based on my knowledge, training, and experience, as well as my conversations with other Special Agents of the Federal Bureau of Investigation, who are experienced with electronic communication systems, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the Devices. This information can sometimes be recovered with forensics tools.

19. *Forensic evidence.* As further described in Attachment B, this applications seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of use, who used it, and when.

20. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to, computer-assisted scans of the entire medium that might expose many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

21. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is a reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

8

## V. CONCLUSION

22. Based upon the foregoing, I believe that probable cause exists to search the Devices, which are more particularly described in Attachment A, and which are currently located in evidence at the Milwaukee Police Department, for evidence of WILLIAMS's possession of a firearm and THOMAS's and WILLIAMS's activities on or about July 7, 2019, through July 11, 2019.

## ATTACHEMNT A

The following property is to be searched:

   a. a black LG touch screen cell phone, in evidence at the Milwaukee Police Department under Inventory # 19022487, Item 3;

   b. a grey and black LG touch screen phone, in evidence at the Milwaukee Police Department under Inventory # 19022487, Item 4;

   c. a black LG touch screen cell phone with cracked screen, in evidence at the Milwaukee Police Department under Inventory # 19022487, Item 5; and

   d. a grey LG touch screen cell phone, in evidence at the Milwaukee Police Department under Inventory # 19022487, Item 6.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1. All records on the Devices described in Attachment A that relate to violations of Title 18, United States Code, Section 922(g) and 924(a)(2), which was in active memory of the Devices as of July 11, 2019, to include:

   a. any information related to possession of firearms (including photographs, text messages, emails, or any other communication information);

   b. any information recording any suspects' schedule or travel from July 7, 2019 through July 11, 2019;

   c. any web search information related to the offense or homicide described above;

   d. any photographs, communications, or correspondence indicative of prostitution or human trafficking;

   e. any communications via call logs, text messages, email, Facebook, Twitter, or other web-based applications between the subjects and others regarding the offense described above; and

   f. any documents showing the purchase or sale of firearms.

2. Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of electronic storage and any photographic form.